UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

**WILLIAM BRESNAHAN,**

    Plaintiff,

v.                                                    Case No. 2:20-cv-982-SPC-NPM

**COMMISSIONER OF SOCIAL SECURITY,**

    Defendant.

---

## REPORT AND RECOMMENDATION

Plaintiff William Bresnahan seeks judicial review of a denial of Social Security disability benefits. The Commissioner of the Social Security Administration filed the transcript of the proceedings (Doc. 20),[1] and the parties filed a joint memorandum (Doc. 27). As discussed in this report, the decision of the Commissioner should be affirmed.

### I.    Eligibility for Disability Benefits and the Administration's Decision

#### A.    Eligibility

The Social Security Act and related regulations define disability as the inability to do any substantial gainful activity by reason of one or more medically determinable physical or mental impairments that can be expected to result in death or that have lasted or can be expected to last for a continuous period of not less than

---

[1] Cited as "Tr." followed by the corresponding page number.

twelve months. [2] Depending on its nature and severity, an impairment limits exertional abilities like walking or lifting, nonexertional abilities like seeing or hearing, tolerances for workplace conditions like noise or fumes, or aptitudes necessary to do most jobs such as using judgment or dealing with people.[3] And when functional limitations preclude both a return to past work and doing any other work sufficiently available in the national economy (or an impairment meets or equals the severity criteria for a disabling impairment as defined in the regulatory "Listing of Impairments"), the person is disabled for purposes of the Act.[4]

## B.    Factual and procedural history

On February 27, 2018, Bresnahan applied for supplemental security income. (Tr. 248).[5] He asserted an onset date of January 1, 2014 (*id.*)[6] and provided the following grounds in support of his application: headaches due to brain surgery;

---

[2] *See* 42 U.S.C. §§ 416(i), 423(d), 1382c(a)(3); 20 C.F.R. §§ 404.1505, 416.905.

[3] *See* 20 C.F.R. § 416.913(a)(2)(i)(A)-(D) (discussing the various categories of work-related abilities), 416.922(b) (providing examples of abilities and aptitudes necessary to do most jobs), 416.945(b)-(d) (discussing physical, mental, and other abilities that may be affected by an impairment), 416.994(b)(1)(iv) (defining functional capacity to do basic work activities).

[4] *See* 20 C.F.R. §§ 404.1511, 416.911(a).

[5] The ALJ decision states the filing date was February 13, 2018. (Tr. 15-36). Any error in the recitation of the filing date is harmless because the ALJ adjudicated the full relevant time period.

[6] The initial disability determination used the February 27, 2018 filing date as the alleged onset date. (Tr. 138-139). Since Bresnahan applied for supplemental security income, the earliest month for which he could receive benefits is the month following the month he filed his application. *See* 20 C.F.R. §§ 416.330, 416.335. Bresnahan's representative acknowledged as much during both ALJ hearings. (Tr. 52, 103).

dizziness; depression; memory loss; and "all 'n all functioning." (Tr. 139, 154, 269). As of the application date, Bresnahan was 36 years old with a high school education. (Tr. 105, 153, 270). He previously worked as an outdoor handyman. (Tr. 84, 105, 270).

On behalf of the administration, a state agency [7] reviewed and denied Bresnahan's application initially on July 18, 2018, and upon reconsideration on October 19, 2018. (Tr. 151, 166). At Bresnahan's request, Administrative Law Judge (ALJ) Mario G. Silva held a hearing on November 15, 2019, during which Bresnahan, his father, and a vocational expert testified. (Tr. 97-137, 186). The ALJ held a supplemental hearing by phone on July 13, 2020, during which Bresnahan, a medical expert, and a vocational expert testified. (Tr. 43-96). On July 29, 2020, the ALJ issued a decision finding Bresnahan not disabled. (Tr. 12-37).

Bresnahan's timely request for review by the administration's Appeals Council was denied. (Tr. 1-6). He then brought the matter to this court, and the case is ripe for judicial review.

## C.    The ALJ's decision

The ALJ must perform a five-step sequential evaluation to determine if a claimant is disabled. 20 C.F.R. § 416.920(a)(1). This five-step process determines:

---

[7] In Florida, a federally funded state agency develops evidence and makes the initial determination whether a claimant is disabled. *See* 42 U.S.C. § 421(a); 20 C.F.R. § 416.903(a).

> (1) whether the claimant is engaged in substantial gainful activity; (2) if not, whether the claimant has a severe impairment or combination of impairments; (3) if so, whether these impairments meet or equal an impairment listed in the Listing of Impairments; (4) if not, whether the claimant has the residual functional capacity ("RFC") to perform his past relevant work; and (5) if not, whether, in light of his age, education, and work experience, the claimant can perform other work that exists in significant numbers in the national economy.
>
> *Atha v. Comm'r, Soc. Sec. Admin.*, 616 F. App'x 931, 933 (11th Cir. 2015) (internal quotation omitted); *see also* 20 C.F.R. § 416.920(a)(4).

The governing regulations provide that the Social Security Administration conducts this "administrative review process in an informal, non-adversarial manner." 20 C.F.R. § 416.1400(b). Unlike judicial proceedings, Social Security Administration hearings "are inquisitorial rather than adversarial." *Washington v. Comm'r of Soc. Sec.*, 906 F.3d 1353, 1364 (11th Cir. 2018) (quoting *Sims v. Apfel*, 530 U.S. 103, 111 (2000) (plurality opinion)). "Because Social Security hearings basically are inquisitorial in nature, '[i]t is the ALJ's duty to investigate the facts and develop the arguments both for and against granting benefits.'" *Id.* Indeed, "at the hearing stage, the commissioner does not have a representative that appears 'before the ALJ to oppose the claim for benefits.'" *Id.* (quoting *Crawford & Co. v. Apfel*, 235 F.3d 1298, 1304 (11th Cir. 2000)). "Thus, 'the ALJ has a basic duty to develop a full and fair record. This is an onerous task, as the ALJ must scrupulously and conscientiously probe into, inquire of, and explore for all relevant facts.'" *Id.* (quoting *Henry v. Comm'r of Soc. Sec.*, 802 F.3d 1264, 1267 (11th Cir. 2015)).

Nonetheless, while the claimant is temporarily relieved of the burden of production during step five as to whether there are enough jobs the claimant can perform, the claimant otherwise has the burdens of production and persuasion throughout the process. *See* 20 C.F.R. § 416.912 (providing that the claimant must prove disability); *see also Moore v. Barnhart*, 405 F.3d 1208, 1211 (11th Cir. 2005) (noting the regulations "place a very heavy burden on the claimant to demonstrate both a qualifying disability and an inability to perform past relevant work"). In short, the "overall burden of demonstrating the existence of a disability as defined by the Social Security Act unquestionably rests with the claimant." *Washington*, 906 F.3d at 1359 (quoting *Doughty v. Apfel*, 245 F.3d 1274, 1280 (11th Cir. 2001)).

At step one of the evaluation, the ALJ found Bresnahan had not engaged in substantial gainful activity since February 13, 2018. (Tr. 19). At step two, the ALJ characterized Bresnahan's severe impairments as craniotomy subsequent to subdural hematoma, with resulting headaches, and right knee degenerative joint disease. (Tr. 19). At step three, the ALJ determined Bresnahan did not have an impairment or combination of impairments that met or medically equaled the severity of an agency-listed impairment. (Tr. 26).

As a predicate to step four, the ALJ arrived at the following RFC:

[T]he claimant has the residual functional capacity to perform light work as defined in 20 CFR 416.967(b) except lift and/or carry 50 pounds occasionally, 25 pounds frequently; stand and/or walk 30 minutes at one time for up to three hours per day in combination, unrestricted in the amount he is

able to sit for a combined total of eight hours per day with normal breaks; never climb ladders, ropes, or scaffolds; frequently climb ramps or stairs; frequently balance or stoop; occasionally kneel, crouch, or crawl; avoid all exposure to hazards including unprotected moving mechanical parts, exposure to unprotected heights, and should never engage in commercial driving.

(Tr. 27). Consequently, the ALJ found Bresnahan unable to perform any past relevant work. (Tr. 34). At step five, the ALJ found Bresnahan could perform other work that exists in significant numbers in the national economy. (Tr. 35). The ALJ observed that the administration's Medical-Vocational Guidelines support a finding that Bresnahan is not disabled. (Tr. 35). And a vocational expert opined during the ALJ hearing that six occupations represent the kinds of jobs that an individual of Bresnahan's age, education, work experience, and RFC can perform:

- *Bench Worker*, DOT# 706.684-022, Light, SVP 2, 9,800 jobs nationally;

- *Plumbing and Hardware Assembler*, DOT# 706.684-086, Light, SVP 2, 6,500 jobs nationally;

- *Tester and Sorter*, DOT# 727.687-062, Light, SVP 2, 15,700 jobs nationally;

- *Production Worker*, DOT# 734.687-090, Sedentary, SVP 1, 4,900 jobs nationally;

- *Hand Packager*, DOT# 559.687-014, Sedentary, SVP 2, 8,000 jobs nationally; and

- *Inspector and Sorter*, DOT# 521.687-086, Sedentary, SVP 2, 9,000 jobs nationally.

(Tr. 35-36).[8] Thus, for purposes of the Act, the ALJ concluded Bresnahan was not

---

[8] The DOT numbers refer to the *Dictionary of Occupational Titles* and its detailed explanations concerning each occupation's requirements. These descriptions include exertion and skill levels.

disabled from February 13, 2018, through July 29, 2020, the date of decision.

## II.    Analysis

Bresnahan's appeal presents the following questions for review:

1. whether remand is required because the statute governing the removal of the Commissioner violated the separation of powers;

2. whether the RFC contains limitations related to the severe impairment of craniotomy with resulting headaches; and

3. whether the ALJ properly identified and resolved any conflicts between the vocational expert testimony and the Dictionary of Occupational Titles.

### A.    Standard of review

The court "may not decide the facts anew, make credibility determinations, or reweigh the evidence." *Buckwalter v. Acting Comm'r of Soc. Sec.*, 997 F.3d 1127, 1132 (11th Cir. 2021). While the court must account for evidence both favorable and unfavorable to a disability finding and view the evidence as a whole, *Foote v. Chater*, 67 F.3d 1553, 1560 (11th Cir. 1995), the court's review of the administration's decision is limited to determining whether "it is supported by substantial evidence and based on proper legal standards." *Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1158 (11th Cir. 2004). "Substantial evidence is more than a scintilla and is

---

Exertion refers to the work—in a purely physical sense—that the job requires, and it is divided into five categories: sedentary, light, medium, heavy, and very heavy. Skill refers to how long it takes to learn the job, and it is divided into three categories: unskilled, semiskilled, and skilled. The "SVP" (Specific Vocational Preparation) provides further subdivision of the three skill categories into nine levels: SVP 1 and 2 are unskilled; SVP 3 and 4 are semiskilled; and SVP 5 through 9 are skilled.

such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Goode v. Comm'r of Soc. Sec.*, 966 F.3d 1277, 1280 (11th Cir. 2020) (quoting *Crawford*, 363 F.3d at 1158)).

"[T]he threshold for such evidentiary sufficiency is not high." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019). The inquiry is "case-by-case," and "defers to the presiding ALJ, who has seen the hearing up close." *Id*. at 1157. In other words, a "presumption of validity attaches" to the ALJ's factual findings. *Walker v. Bowen*, 826 F.2d 996, 999 (11th Cir. 1987). And if supported by substantial evidence, the ALJ's findings of fact are conclusive. 42 U.S.C. § 405(g). This means the district court will affirm, even if the court would have reached a contrary result as finder of fact, and even if the court finds that the evidence "preponderates against" the agency's decision. *Noble v. Comm'r of Soc. Sec.*, 963 F.3d 1317, 1323 (11th Cir. 2020) (quoting *Barnes v. Sullivan*, 932 F.2d 1356, 1358 (11th Cir. 1991)).

## B.     There was no separation-of-powers violation warranting remand

Bresnahan argues the administration's structure violates the separation of powers due to the statutory provision governing the President's authority to remove the Commissioner (42 U.S.C. § 902(a)(3)). (Doc. 27, pp. 33-36). And to the extent it is construed as limiting the President's authority to remove the Commissioner without cause, the Commissioner agrees that the removal provision is unconstitutional. (Doc. 27, pp. 36-37). But Bresnahan's claim was adjudicated by an

ALJ whose tenure was ratified by former Acting Commissioner Berryhill, an officer removable at will and not subject to 42 U.S.C. § 902(a)(3)'s tenure protection. "Although the statute unconstitutionally limited the President's authority to remove the confirmed [Commissioner], there was no constitutional defect in the statutorily prescribed method of appointment to that office. As a result, there is no reason to regard any of the actions taken by the [administration] as void." *Collins v. Yellen*, 141 S. Ct. 1761, 1787 (2021); *see also id*. at 1802 (Kagan, J. concurring) ("Consider the hundreds of thousands of decisions that the Social Security Administration (SSA) makes each year. … I doubt the mass of SSA decisions—which would not concern the President at all—would need to be undone .... When an agency decision would not capture a President's attention, his removal authority could not make a difference.").

There is no indication the President attempted or desired the removal of the Commissioner while this case was pending before the administration. And Bresnahan has neither shown a nexus between the removal restrictions and his claim, nor plausibly alleged that the statutory tenure protection affected the ALJ's decision or caused him harm. For these reasons, this court has joined its sister courts throughout the country and repeatedly held this separation-of-powers argument meritless, and it should do so again here. *See Tibbetts v. Comm'r of Soc. Sec.*, No. 2:20-cv-872-SPC-MRM, 2021 WL 6297530 (M.D. Fla. Dec. 21, 2021) (report and

recommendation), *no objection and adopted*, 2022 WL 61217 (Jan. 6, 2022); *see also Hultgren v. Comm'r of Soc. Sec.*, No. 2:20-cv-892-SPC-NPM, 2022 WL 1085547 (M.D. Fla. Feb. 9, 2022) (report and recommendation), *overruling objections and adopted*, 2022 WL 736176 (Mar. 11, 2022); *Frank v. Comm'r of Soc. Sec.*, No. 2:20-cv-962-SPC-NPM, 2022 WL 598036 (M.D. Fla. Feb. 10, 2022) (report and recommendation), *no objection and adopted*, 2022 WL 596833 (Feb. 25, 2022).

## C. The RFC contains limitations related to the severe impairment of craniotomy with resulting headaches

Bresnahan argues the RFC does not contain any limitations related to his severe impairment of "craniotomy subsequent to subdural hematoma, with resulting headaches." But even a cursory examination of the ALJ's decision in conjunction with the hearing transcripts dispels this notion. At the outset of the ALJ hearing, Bresnahan's representative—from the same firm that represents him here—argued that the craniotomy performed in 2015 was the "primary severe impairment" because Bresnahan thereafter suffered migraine, vertigo, and seizure symptoms as a result of the surgery. (Tr. 102-103).[9] Bresnahan also ascribed muscle loss to the surgery, claiming that he basically slept four months straight after the procedure and

---

[9] *See also* Tr. 103 (representative suggesting that "the onset is probably the 2015 date of the craniotomy"); Tr. 519 (Bresnahan's neurologist attributing the partial seizures to the intracerebral hemorrhage and brain surgery).

never got his appetite back. (Tr. 106, 109).

Bresnahan suggested that both the vertigo and muscle loss impaired his lifting ability, and that the vertigo and knee problems made it difficult to walk. (Tr. 60, 108-109). And Bresnahan and his medical providers characterized the post-surgical headaches as contributing to his dizziness. (Tr. 74, 621). Bresnahan and his father also explained that the occasional seizures made Bresnahan briefly lose his concentration and orientation. (Tr. 58, 123).[10] Indeed, the ALJ acknowledged that headache disorders can sometimes satisfy the listing criteria for dyscognitive seizures. (Tr. 27); *see also* Social Security Ruling (SSR) 19-4p, 2019 WL 4169635 (explaining that co-occurring ***observable signs of headache can include tremors, dizziness, and instability***). Accounting for the limiting effects of the muscle loss, seizures, and vertigo/dizziness caused by the craniotomy with resulting headaches, the RFC included lift/carry and walking limitations and it precluded commercial driving; exposure to hazards like unprotected moving mechanical parts; and climbing ladders, ropes, or scaffolds. (Tr. 27).

Thus, this is not a case in which the limiting effects of a severe impairment (here, status post-craniotomy) escaped analysis by the ALJ,[11] or one in which the

---

[10] But Bresnahan's father would still let Bresnahan borrow his car and drive, which suggests that the seizures were rare, mild, and of short duration. (Tr. 125). Even Bresnahan's representative during the ALJ hearings repeatedly refused to characterize the seizures as disabling. (Tr. 52-53, 103).

[11] Bresnahan makes a perfunctory suggestion that the ALJ "should have addressed the credibility

RFC does not contain limitations reasonably related to it. Bresnahan's allegation that "the ALJ's RFC assessment does not include any limitations associated with this impairment" is simply untrue, and he has therefore failed to show any reversible error.

**D.    The ALJ did not fail to identify and resolve most of the apparent conflicts between the opinion testimony and the DOT and any errors were harmless**

Bresnahan raises three arguments as to the ALJ's step five finding. First, Bresnahan claims there was an apparent conflict between the RFC limitation of standing or walking for no more than thirty minutes at one time for up to three hours per day and the demands of the three representative, light-work occupations as defined by the DOT. While the ALJ elicited an explanation by the vocational expert as to this inconsistency, Bresnahan argues the vocational expert's explanation was not reasonable because it was not specific enough. Second, Bresnahan contends the RFC limitation to avoid all exposure to hazards is inconsistent with all of the representative occupations except Production Worker and Tester and Sorter. Finally, Bresnahan claims that should the court agree that the ALJ failed to resolve these

---

of the intensity and frequency of the Plaintiff's headaches" (Doc. 27, p. 17), but undeveloped arguments like this are forfeited. *See Access Now, Inc. v. Sw. Airlines*, 385 F.3d 1324, 1330 (11th Cir. 2004) ("[A] legal claim or argument that has not been briefed before the court is deemed abandoned and its merits will not be addressed."). Besides, the ALJ's decision recounts more than enough evidence to justify discounting the alleged intensity, persistence, and limiting effects of the symptoms related to the muscle loss, seizures, and vertigo/dizziness caused by the craniotomy with resulting headaches. *See, e.g.*, (Tr. 21, 29-31, 33 (citing Tr. 519, 630, 634, 642, 646, 651-661, 702, 706, 720, 724, 728, 743)).

apparent conflicts, the error would not be harmless because the number of Production Worker jobs, alone, would not suffice to show a significant number of jobs.

ALJs have an affirmative duty to identify and resolve apparent conflicts between a claimant's limitations and the demands of occupations—as defined in the DOT—that a vocational expert offers as examples of the work that a claimant can perform. *Washington v. Comm'r of Soc. Sec.*, 906 F.3d 1353, 1356 (11th Cir. 2018). "During or after the hearing, the ALJ is expected to take notice of apparent conflicts, even when they are not identified by a party, and resolve them." *Id*. at 1363. And whenever a conflict is apparent, the ALJ must also ask the vocational expert about it. This involves more than simply asking the expert to confirm no conflict, but to provide a reasonable explanation for any apparent discrepancy. *See id*. Finally, the ALJ's decision must detail how the conflict was resolved. An ALJ's failure to fully discharge this duty prevents the expert's contradicted opinion from serving as substantial evidence. *See id*. at 1356.

Here, Bresnahan acknowledges that the ALJ questioned the vocational expert about conflicts between the sit and stand limitation and the DOT. The exchange was as follows:

> [ALJ:] Let me ask you if, in your opinion, there are any conflicts with any aspect of your testimony and the DOT or the SCO, and if the DOT is silent on certain parameters, including potentially mental limitations with standing or walking, please discuss any variances or silence.

[VE:] I'd like to begin it doesn't mean a person has to stand, walk, or lift. For example, a sewing machine operator, they have no standing, walking, and lifting, and it's still a light duty job due to physical effort. So even though—and all light duty jobs, the maximum level is six hours standing. However, *not all light duty jobs require standing*. That is within the DOT, and as it's written. However, most individuals assume it has to be at the maximum level so *it's not a deviation in that way*. The cognitive factors in line with how the Department of Labor does their—in such important periods. Everything else is conformed to the DOT as printed.

[ALJ:] Okay. All right. So in essence, *you testified slightly outside of the DOT*, but there are no conflicts with the DOT; is that correct?

[VE:] Well, *no, it's within the DOT*. For example, sewing machine operator is listed as light duty, but most people when they assume light duty that don't know how the DOT is operated assumes light duty means a person has to stand, and a person has to lift up to 20 pounds, and it doesn't. And it depends on the physical effort of the job as to whether it's sedentary or light in that factor.

[ALJ:] Okay.

[VE:] So *it's all within the confines* but for some people that haven't fully studied it, they might assume that light duty job has to mean standing, and it doesn't.

(Tr. 89-90) (emphasis added).

Bresnahan takes issue with this explanation because he claims it is not a specific explanation as to why the three light level jobs (Bench Worker, Plumbing and Hardware Assembler, and Tester and Sorter) the vocational expert listed do not require as much standing as indicated in the DOT. But a reasonable explanation for conflicts or apparent conflicts may include evidence from the vocational expert alone, and the vocational expert testified that the representative light level occupations do not conflict with the DOT because most jobs within those occupations do not require, for example, standing for six hours (the maximum

amount for light jobs). (Tr. 90). His explanation about the occupations not generally requiring the maximum amount of standing, walking, or lifting constitutes a reasonable explanation. SSR 00-4P, 2000 WL 1898704, *2-3.

What's more, in his decision, the ALJ adopted the vocational expert's testimony and found it was consistent with the DOT. The ALJ explained:

> The vocational expert testified as to the light jobs and whether those jobs could be performed with the three-hour standing and/or walking as defined in the residual functional capacity finding. The vocational expert testified that there are a considerable number of jobs where standing and/or walking is less than six hours, but are rated at light due to the force requirements. The vocational expert additionally testified that the light jobs identified above could be performed within those parameters.

(Tr. 36).

Vocational expert testimony is not subject to trial-like scrutiny. Rather, the ALJ hearing is an informal and non-adversarial proceeding, and the traditional rules of evidence do not apply. *See* 20 C.F.R. § 416.1400(b); *Washington v. Comm'r of Soc. Sec.*, 906 F.3d 1353, 1364 (11th Cir. 2018). Read in this context, the vocational expert adequately addressed the apparent conflict, and the ALJ's decision is supported by substantial evidence. Besides, any error would be harmless because the ALJ also supplied three sedentary occupations, and Bresnahan asserts no conflict between them and the RFC's standing and walking limitations.

Bresnahan's second argument concerns an alleged failure to resolve an inconsistency between the no hazards limitation and four of the six representative occupations. But Bresnahan appears to adopt a hyper-literal and myopic reading of

the language in the RFC restricting him to "no exposure to any hazards." (Doc. 27, p. 27). His approach would render the language that follows meaningless: "including unprotected moving mechanical parts, exposure to unprotected heights, and should never engage in commercial driving." (Tr. 27). Indeed, as stated in the ALJ's decision, the "no hazards" limitation is "more fully defined in the [RFC]." (Tr. 21). Read in context, the RFC does not limit Bresnahan to avoiding each and every condition that anyone could perceive as hazardous. Rather, the RFC limits exposure to occupational hazards similar in kind and degree to those listed in the RFC.

Bresnahan nevertheless points to the narrative description of four of the listed occupations (Bench Worker, Plumbing and Hardware Assembler, Hand Packager, and Inspector and Sorter) as posing a conflict with this aspect of the RFC. (Doc. 27, pp. 27-28). Notably, the DOT translated the narrative of these occupations to indicate that the conditions of moving mechanical parts and high exposed places were not present. *See Bench Worker*, DOT# 706.684-022, 1991 WL 679050; *Plumbing and Hardware Assembler*, DOT# 706.684-086, 1991 WL 679065; *Hand Packager*, DOT# 559.687-014, 1991 WL 683782; *Inspector and Sorter*, DOT# 521.687-086, 1991 WL 674226 (indicating "Not Present - Activity or condition does not exist" for the conditions of Moving Mechanical Parts and High Exposed Places). But, as Bresnahan points out, the narratives for these occupations mention hazards that may be similar in kind and degree, such as the use of power tools and being on

an assembly line. This may be a fair point, and likely should have been explored and resolved by the ALJ. Nevertheless, because other representative occupations were offered by the vocational expert, any error would be harmless. *See Wooten v. Comm'r of Soc. Sec.*, 787 F. App'x 671, 674 (11th Cir. 2019) (finding any error in ALJ's conclusion that the claimant could perform two jobs was harmless because the claimant was capable of performing the third, remaining job, which existed in sufficient numbers); *B.S. v. Comm'r of Soc. Sec.*, No. 1:20-cv-77 (TQL), 2021 WL 1598210, *3 (M.D. Ga. Apr. 23, 2021).

Even if the only occupations left are Production Worker and Tester and Sorter (not challenged as hazardous) or just Production Worker (not challenged as hazardous or as light work), the number of jobs is enough to constitute substantial evidence. *See* 20 C.F.R. § 416.966(b) (requiring "a significant number of jobs (in one or more occupations)"); *see also Bellamy v. Comm'r of Soc. Sec.*, 734 F. App'x 735, 738 (11th Cir. 2018) (declining to address whether other occupations conflicted with the DOT because the vocational expert's testimony supported that the claimant could at least perform one occupation that was available in significant numbers). With 20,600 jobs for Production Worker and Tester and Sorter jobs combined, or with the 4,900 jobs for only Production Worker, the number-of-jobs evidence was sufficient. *See Brooks v. Barnhart*, 133 F. App'x 669, 671 (11th Cir. 2005) (finding 840 jobs in the national economy constituted a significant number and was supported

by substantial evidence); *Best v. Comm'r of Soc. Sec.*, No. 2:17-cv-219-FTM-MRM, 2018 WL 3569255, at *7 (M.D. Fla. July 25, 2018) (finding 2,000 jobs constitute a significant number of jobs in the national economy); *Blackmon v. Saul*, No. 8:19-cv-3040-T-AEP, 2021 WL 222777, *4 (M.D. Fla. Jan. 22, 2021) (finding combined total of 7,000 jobs nationally constituted a significant number at step five); *Mills v. Comm'r of Soc. Sec.*, No. 8:19-cv-2721-T-JSS, 2021 WL 789908, *4 (M.D. Fla. Jan. 19, 2021) (same). As the ALJ observed, each representative occupation independently supplied a sufficient number of jobs to show that someone with Bresnahan's vocational profile and RFC can perform a significant number of jobs in the national economy. (Tr. 36).[12]

## III.   Conclusion

Upon consideration of the submissions of the parties and the administrative record, substantial evidence supports the ALJ's decision and there was either no error or no harmful error in the ALJ's application of the correct legal standard. Accordingly, the decision of the Commissioner should be **AFFIRMED** pursuant to

---

[12] Bresnahan does not take issue with the vocational expert's job estimates for each occupation, so any challenge is forfeited. Because the vocational expert's expertise alone supplies a foundation, and the job numbers are based on the vocational expert's expertise, the vocational expert's testimony serves as substantial evidence in support of the ALJ's step-five finding. *See Leonard v. Comm'r of Soc. Sec.*, 409 F. App'x 298, 301 (11th Cir. 2011); *Biestek v. Berryhill*, 139 S. Ct. 1148, 1155 (2019) (A vocational expert's number-of-jobs testimony "may count as substantial evidence even when unaccompanied by supporting data.").

sentence four of 42 U.S.C. § 405(g), and the Clerk of Court should be directed to enter judgment in Defendant's favor.

Respectfully recommended on August 10, 2022.

NICHOLAS P. MIZELL
UNITED STATES MAGISTRATE JUDGE


## NOTICE TO PARTIES

A party has fourteen days from this date to file written objections to the Report and Recommendation's factual findings and legal conclusions. A party's failure to file written objections "waives the right to challenge on appeal the district court's order based on unobjected-to factual and legal conclusions." *See* 11th Cir. R. 3-1. **To expedite resolution, parties may file a joint notice waiving the 14-day objection period.**