UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

WILLIAM BRESNAHAN,

     Plaintiff,

v.                          Case No.:  2:20-cv-982-SPC-NPM

COMMISSIONER OF SOCIAL
SECURITY,

     Defendant.

_____/

### OPINION AND ORDER[1]

     Before the Court is United States Magistrate Judge Nicholas P. Mizell's

Report and Recommendation ("R&R") (Doc. 28).  Judge Mizell recommends

denying Social Security benefits for Plaintiff William Bresnahan.  Plaintiff

objects to the R&R (Doc. 29), to which Defendant Commissioner of Social

Security has responded (Doc. 30).  The R&R is thus ripe for review.

     When reviewing a report and recommendation, the district court "may

accept, reject, or modify, in whole or in part, the findings or recommendations

made by the magistrate judge."  28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b)(3).

When objections are made to a report and recommendation, the district court

---

[1] Disclaimer: Papers hyperlinked to CM/ECF may be subject to PACER fees.  By using hyperlinks, the Court does not endorse, recommend, approve, or guarantee any third parties or their services or products, nor does it have any agreements with them.  The Court is not responsible for a hyperlink's functionality, and a failed hyperlink does not affect this Order.

engages in a de novo review of the issues raised.  28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b)(3).

After a careful and independent review, the Court overrules the objections and adopts the R&R in full.  Plaintiff's objections largely rehash his prior arguments hoping the undersigned will disagree with Judge Mizell's analysis.  *See Cole v. Comm'r of Soc. Sec'y*, No. 2:20-cv-524-SPC-NPM, 2021 WL 5866968, at *1 (M.D. Fla. Dec. 10, 2021) (summarily rejecting mere re-argument objections).  But the undersigned agrees with the well-reasoned R&R.  Nevertheless, the undersigned offers additional analysis on Plaintiff's specific objections.

To start, the ALJ found Plaintiff not to be disabled after using the familiar five-step sequential evaluation process.  Steps four and five are at issue.

At step four, the ALJ determined Plaintiff has the residual functional capacity ("RFC") to perform light work per 20 C.F.R. § 416.967(b) with added limitations:

> Lift and/or carry 50 pounds occasionally, 25 pounds frequently; *stand and/or walk 30 minutes at one time for up to three hours per day in combination*, unrestricted in the amount he is able to sit for a combined total of eight hours per day with normal breaks; never climb ladders, ropes, or scaffolds; frequently climb ramps or stairs; frequently balance or stoop; occasionally kneel, crouch, or crawl; avoid all exposure to hazards including *unprotected moving*

> *mechanical parts*, exposure to unprotected heights, and should never engage in commercial driving.

(Doc. 20-2 at 28 (emphasis added)).

At step five, the ALJ had to decide whether Plaintiff could perform other work that exists in significant numbers in the national economy given his age, education, and work history. 20 C.F.R. § 416.920(a)(4)(v). The ALJ credited the testimony of a vocational expert ("VE"), who said Plaintiff could perform three light duty jobs (bench worker, plumbing and hardware assembler, and tester and sorter) and three sedentary jobs (production work, hand packager, and inspector and sorter).

The RFC finding at step four and the "significant numbers" determination at step five prompts two objections. First, Plaintiff argues the ALJ did not resolve a conflict between an RFC limitation and some light jobs he could perform in the national economy. For background, administrative law judges must identify and resolve apparent conflicts between a claimant's limitations and the demands of occupations (per the Dictionary of Occupational Titles ("DOT")) that a vocational expert offers as examples of work a claimant can perform. *See Washington v. Comm'r of Soc. Sec.*, 906 F.3d 1353, 1356 (11th Cir. 2018). An apparent conflict is "a conflict that is reasonably ascertainable or evident from a review of the DOT and the VE's testimony." *Id.* at 1365. If there is an apparent conflict, then the ALJ must (1) ask the vocational expert

to reasonably explain any apparent discrepancy; and (2) detail in the decision how the conflict was resolved. *Id.* at 1363.

Here, the ALJ questioned the VE about conflicts between the sit and stand limitation and the DOT's description for certain light duty jobs:

> Q     All right.  Let me ask you if, in your opinion, there are any conflicts with any aspect of your testimony and the DOT or the SCO, and if the DOT is silent on certain parameters, including potentially mental limitations with standing or walking, please discuss any variances or silence.
>
> A     I'd like to begin it doesn't mean a person has to stand, walk, or lift.  For example, a sewing machine operator, they have no standing, walking, and lifting, and it's still a light duty job due to physical effort.  So even though – and all light duty jobs, the maximum level is six hours standing.  However, not all light duty jobs require standing.  That is within the DOT, and as it's written.  However, most individuals assume it has to be at the maximum level so it's not a deviation in that way.  The cognitive factors in line with how the Department of Labor does their – in such important periods.  Everything else is conformed to the DOT as printed.
>
> Q     Okay.  All right.  So in essence, you testified slightly outside of the DOT, but there are no conflicts with the DOT; is that correct?
>
> A     Well, no, it's within the DOT.  For example, sewing machine operator is listed as light duty, but most people when they assume light duty that don't know how the DOT is operated assumes light duty means a person has to stand, and a person has to lift up to 20 pounds, and it doesn't.  And it depends on the physical effort of the job as to whether it's sedentary or light in that factor.
>
> Q     Okay.

> A      So it's all within the confines but for some people that haven't fully studied it, they might assume the light duty job has to mean standing, and it doesn't.

(Doc. 20-2 at 90-92).

Plaintiff now argues the VE's explanation of the conflict—which focused on sewing machine operators—was unreasonable.  (Doc. 29 at 4).  Rather than explaining why sewing machine operators do not require standing and walking more than three hours per day and no more than 30 minutes at a time, Plaintiff maintains the VE should have explained why his light jobs require that little standing.  The Court disagrees.

The ALJ satisfied his legal burden.  He did more than just ask the VE to confirm no conflict.  He asked the VE to explain the apparent discrepancy.  This led the VE to answer the ALJ's hypothetical question with an example of sewing machine operators that helped illustrate his general point that not all light duty jobs require an individual to stand up to six hours per day.  When reading the VE's testimony in full context, there's no basis to believe the VE did not mean to include the three light duty jobs in his explanation.  Plaintiff is unhappy with how the VE explained the inconsistency, yet his lawyer never asked the VE questions about the matter at the hearing.  (Doc. 20-2 at 92-93, 95).  Because the ALJ did what was required of him, it is not for this Court to reweigh the evidence.  The Court thus overrules this objection.

Second, Plaintiff objects to an unresolved inconsistency between him having to avoid "unprotected moving mechanical parts" yet working four jobs with comparable hazards.[2] (Doc. 20-2 at 28). To Judge Mizell, Plaintiff argued the ALJ never resolved the contradiction. But Judge Mizell reasoned the ALJ committed, at most, a harmless error because Plaintiff could still perform two of the listed jobs. (Doc. 28 at 17 ("With 20,600 jobs for Production Worker and Tester and Sorter jobs combined, or with the 4,900 jobs for only Production Worker, the number-of-jobs evidence was sufficient.")). Plaintiff objects to the harmless error finding. He says there's no harmless error because the ALJ never decided whether the remaining jobs independently exist in significant numbers per *Viverette v. Comm'r of Soc. Sec.*, 13 F.4th 1309, 1318 (11th Cir. 2021).

In *Viverette*, a vocational expert testified the claimant could perform these jobs: document preparer (104,000 jobs), final assembler (7,000 jobs), and check weigher (14,000 jobs). An apparent conflict, however, eliminated the document preparer, which accounted for eighty percent of the jobs the claimant could do. The district court found harmless error because the claimant could still work two other jobs. The Eleventh Circuit disagreed. It found the ALJ

---

[2] The four jobs are bench worker, plumbing and hardware assembler, inspector and sorter, and hand packager, because their descriptions mention using power tools and being on an assembly line.

treated all three jobs cumulatively for its "significant numbers" decision, and the document preparer was too high a percentage of jobs the claimant could perform. The Eleventh Circuit thus remanded for more factual findings.

Plaintiff says *Viverette* controls. Not so. Here, the ALJ did not view all six positions that Plaintiff could perform cumulatively. Just the opposite. He found that each "independently" constituted many jobs in the national economy. (Doc. 20-2 at 37 ("The undersigned also finds that each position cited above is independently of a sufficient number to qualify as other work pursuant to the regulations.")). Because of this factual finding, this case differs from *Viverette*. The Court thus overrules Plaintiff's objection.

The third and final objection faults the ALJ for overlooking Plaintiff's severe impairment of "craniotomy subsequent to subdural hematoma, with resulting headaches" when deciding his RFC. (Doc. 20-2 at 20). To the ALJ, Plaintiff argued a craniotomy led to him suffering migraines, headaches, dizziness, and other symptoms. (Doc. 20-2 at 103-04). In his decision, the ALJ acknowledged that headache disorders can sometimes satisfy the listing criteria for dyscognitive seizures. (Doc. 20-2 at 28). But he found no medial documents that Plaintiff experienced such seizures and had no marked limitations in his mental functioning. And after reviewing all the record evidence, the ALJ found his headaches did not meet or equal a listing per the regulations. (Doc. 20-2 at 28).

Judge Mizell agreed.  He found, "this is not a case in which the limiting effects of a severe impairment (here, status post-craniotomy) escaped analysis by the ALJ, or one in which the RFC does not contain limitations reasonably related to it." (Doc. 28 at 11-12).  The Court again agrees.

To start, Plaintiff did not properly identify, frame, and develop his argument to Judge Mizell and has thus waived it.  Even setting aside the waiver, substantial evidence supports the ALJ's finding that Plaintiff's headaches are not as limiting as alleged.  For example, treatment notes from different doctors contradict Plaintiff's contention that his headaches leave him incapacitated for two to three days per week because they show he has had no deficits with cognitive function and had normal affect, speech, neurologic function, and concentration.  The Court thus overrules the third objection.

Accordingly, it is now

**ORDERED:**

1. United States Magistrate Judge Nicholas P. Mizell's Report and Recommendation (Doc. 28) is **ACCEPTED and ADOPTED**, and the findings incorporated here.

2. Plaintiff's Objections to the United States Magistrate Judge's Report and Recommendation (Doc. 29) are **OVERRULED**.

3. The Commissioner of Social Security's decision is **AFFIRMED** under sentence four of 42 U.S.C. § 405(g).

4. The Clerk is **DIRECTED** to enter judgment, deny any pending motions as moot, terminate all deadlines, and close the case.

**DONE** and **ORDERED** in Fort Myers, Florida on September 20, 2022.

SHERI POLSTER CHAPPELL
UNITED STATES DISTRICT JUDGE

Copies:  All Parties of Record